Donald F. APPOLONI, Sr., Russell C. Bergemann, and Sandra Engel, individually and as representatives of all similarly-situated individuals, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 5:02–CV–176.

United States District Court,
W.D. Michigan,
Southern Division.

June 18, 2003.

Suzanne Krumholz Clark, Amberg, Firestone & Lee, P.C., Southfield, MI, James Daniel Ponscheck, Michigan Education Association, E. Lansing, MI, for plaintiffs.

Thomas P. Cole, U.S.Department of Justice, Tax Division, Washington, DC, for defendant.

## OPINION

QUIST, District Judge.

### I. *Background*

Plaintiffs, Donald F. Appoloni, Sr., Russell C. Bergemann, and Sandra Engel, are retired public school teachers who allege that they exchanged their property rights of tenure and contractual rights of just cause employment for payments of money by their respective employers. Plaintiffs' employers withheld taxes on those payments under the Federal Insurance Contributions Act ("FICA"). Between January 16, 2002, and September 27, 2002, Plaintiffs filed claims for refunds for the FICA tax withheld on the payments they received in exchange for their property rights. The Internal Revenue Service ("IRS") denied Plaintiffs Appoloni's and Bergemann's claims on February 25, 2002.[1] Plaintiffs filed this action on behalf of themselves and all others similarly situated in the

---

1. Plaintiff Engel had not received a denial letter from the IRS at the time the complaint was filed.

Western District of Michigan against the United States ("Government") for refund of the FICA taxes assessed on the payments they received in exchange for their property rights. Now before the Court is Plaintiffs' motion for class certification.

## II. *Standard for Class Certification*

■ The Supreme Court has required district courts to conduct a "rigorous analysis" into whether the prerequisites of Rule 23 are met before certifying a class. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). Before certifying a class, a district court must determine whether the action satisfies all four prerequisites in Fed.R.Civ.P. 23(a) and at least one of the conditions in Fed.R.Civ.P. 23(b). *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996). The movant bears the burden of proof. *Id.* "Although a hearing prior to the class determination is not always required, 'it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question.'" *Id.* (quoting *Gen. Tel. Co.,* 457 U.S. at 160, 102 S.Ct. at 2372).

## III. *Discussion*

Plaintiffs seek certification of the following class pursuant to Fed.R.Civ.P. 23(b)(1) and (b)(3): "[R]etired public school, college, community college, and university employees who had FICA withheld on money received in exchange for their property rights" and who have "filed claims for refunds with the IRS and have had their claims for refunds denied." (Pls.' Mot. Class Certification ¶ 6.)

■ Prior to reaching the issue of whether the conditions of Rule 23 are met in this case, the Court will address the Government's sovereign immunity argument, which essentially raises the issue of whether a class action is appropriate in a tax refund case. The doctrine of sovereign immunity serves as an absolute bar to an action against the Government. *Dalehite v. United States,* 346 U.S. 15, 30, 73 S.Ct. 956, 965, 97 L.Ed. 1427 (1953). The Government may waive its immunity to suit in certain defined circumstances, and a court's jurisdiction in such instances is defined by the terms of the waiver. *Hercules, Inc. v. United States,* 516 U.S. 417, 422, 116 S.Ct. 981, 985, 134 L.Ed.2d 47 (1996). "[A] waiver of the government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the government." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996).

■ Congress has provided a limited waiver of immunity in 26 U.S.C. § 7422(a) for suits against the Government by taxpayers seeking tax refunds. *See Saunooke v. United States,* 8 Cl.Ct. 327, 330 (1985). This waiver is limited by the requirement that the taxpayer pursue his administrative remedies before filing suit. 26 U.S.C. § 7422(a). "A refund claim with the I.R.S. is a jurisdictional prerequisite to a refund action in federal district court." *Firsdon v. United States,* 95 F.3d 444, 446 (6th Cir.1996). In *McDonnell v. United States,* 180 F.3d 721 (6th Cir.1999), the Sixth Circuit elaborated on the requirements to invoke a federal court's jurisdiction in a tax refund case:

> The regulations promulgated pursuant to § 7422(a) state that "[t]he claim must set forth in detail each ground upon which a credit or refund is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas. Reg. § 301.6402–2(b)(1). When a party fails to state with specificity the grounds for the refund, the court is without jurisdiction to entertain the action. *See Salyersville Nat'l Bank v. United States,* 613 F.2d 650, 651 (6th Cir.1980). "Federal courts have no jurisdiction to entertain taxpayer allegations that impermissibly vary or augment the grounds originally specified by the taxpayer in the administrative refund claim." *Charter Co. v. United States,* 971 F.2d 1576, 1579 (11th Cir.1992).

*Id.* at 722.

The Government contends that tax refund cases are ill-suited for class treatment be-

cause each class member must demonstrate compliance with the jurisdictional prerequisites required to file a suit for a tax refund, e.g., fully paying the assessed tax liability, filing a claim for refund, and showing that the grounds asserted in the refund action are the same grounds asserted in the administrative claim. The Government cites *Saunooke v. United States*, 8 Cl.Ct. 327 (1985), in support of its position. In *Saunooke*, the plaintiffs filed a complaint in the Court of Claims seeking a tax refund under a provision of the Internal Revenue Code exempting income derived from Indian lands. *Id.* at 328–29. In considering the plaintiffs' motion for class certification, the Court of Claims noted its historical aversion to class actions. *Id.* at 329–30. The court explained that the reluctance to certify classes was based upon: (1) the unique nature of the Court or Claims' jurisdiction, which requires individual claimants to show that they have met all prerequisites to a waiver of sovereign immunity; and (2) the inherent flaws associated with maintaining an action as an opt-in or opt-out proceeding. *Id.* The court denied the motion for certification because, among other reasons, the plaintiffs were unable to show that the unnamed class members had complied with the jurisdictional prerequisites to a suit for refund. *Id.* at 330–31. In addition, the court stated that refund cases are not particularly suited for class treatment because such suits begin with a presumption that determinations of the IRS are correct, and "[t]o prevail each individual must not only establish the error in his particular assessment, but also the correct amount of taxes." *Id.* at 331.

In spite of the language in *Saunooke*, other decisions from the Court of Claims have recognized that a class action may be appropriate where it is the most fair and efficient method of resolving a dispute. For example, in *Taylor v. United States*, 41 Fed.Cl. 440 (1998), the court concluded that class certification was appropriate, in spite of the long-recognized principle that claims against the Government for damages require specific proof by the plaintiff. *Id.* at 444. The court

determined that the class could be certified to determine the Government's liability, and damages could be determined through a formula or, if the determination of damages proved too speculative or required consideration of individual facts, the class could be decertified for the determination of money damages. *Id.* The court also found that a class action served the interests of justice because the alternative "test case approach" could result in inconsistent adjudications for the plaintiffs, repetitious litigation for the Government, and a backlog of factually similar cases for the court. *Id.* at 444–45.

In support of their motion, Plaintiffs have presented a list of 189 potential class members. (Pls.'s Br. Supp. Ex. A.) Plaintiffs state that these individuals are retired public school, college, community college, and university employees who had FICA withheld on payments they received in exchange for their property (tenure and just cause) rights. In addition, Plaintiffs state that these individuals have filed claims for refunds with the IRS and have had their claims denied. Finally, Plaintiffs state that their counsel possesses copies of the claims for refund submitted by these individuals and copies of the denial letters from the IRS. (Pls.' Reply Br. at 3.) This information is sufficient to show that the proposed class members have met the prerequisites to the Government's waiver of immunity necessary to invoke this Court's jurisdiction over those claims. Thus, this case is distinguishable from *Saunooke*, because here Plaintiffs have affirmatively shown that the prospective class consists of almost two hundred individuals who have complied with all of the jurisdictional prerequisites to a claim for a refund from the Government.

## A. Prerequisites of Fed.R.Civ.P. 23(a)

Rule 23(a) provides that a class may be certified

only if (1) the class is so numerous that joinder of all parties is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of

the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

**1. Numerosity**

■■■■ Numerosity exists where "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). Whether joinder is impracticable depends on the particular circumstances of each case. *Weaver v. Reagen,* 701 F.Supp. 717, 721 (W.D.Mo.1988). Factors that a court may consider are class size, ease of identification of class members, and the ability of class members to pursue individual actions. *See Kilgo v. Bowman Transp., Inc.,* 789 F.2d 859, 878 (11th Cir.1986). A plaintiff need not prove the number of class members to a certainty. *See Kurczi v. Eli Lilly & Co.,* 160 F.R.D. 667, 672 (N.D.Ohio 1995). The Court may make common sense assumptions in examining the numerosity requirement. *See Vickery v. Jones,* 856 F.Supp. 1313, 1328 (S.D.Ill.1994). While not an absolute rule, it is generally accepted that a class of 40 or more members is sufficient to establish numerosity. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir.1995)(stating that "numerosity is presumed at a level of 40 members") (citing 1 *Newberg On Class Actions, 2d,* § 3.05 (1985 ed.)).

■■■■ As noted above, Plaintiffs have presented evidence showing that there are at least 189 class members in the Western District of Michigan. In addition, Plaintiffs state that since the time of filing their motion for class certification, they have obtained additional information showing that other individuals have filed claims for refunds and have had their claims denied. Thus, Plaintiffs have shown a class sufficiently large to demonstrate impracticability of joinder. *See Taylor,* 41 Fed.Cl. at 445 (concluding that "plaintiffs' proposed class of at least 213 persons [was] a sufficiently large but manageable group").

**2. Commonality**

■■■■ The second prerequisite to class certification is that "there [be] questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "Where the party opposing the class has engaged in some course of conduct that affects a group of persons and gives rise to a cause of action, one or more of the elements of that cause of action will be common to all of the persons affected." *Rodriguez v. Berrybrook Farms, Inc.,* 672 F.Supp. 1009, 1015 (W.D.Mich.1987). The commonality requirement is generally met where the defendant has engaged in standardized conduct towards members of the proposed class. *Keele v. Wexler,* 149 F.3d 589, 594 (7th Cir. 1998).

■■■■ Plaintiffs contend that the question of law common to all members of the class is: whether a payment received in exchange for a property right of tenure or a contractual right to just cause pursuant to an early retirement incentive plan constitutes wages for purposes of FICA. Plaintiffs' legal argument that such payments are not subject to FICA taxes is based upon the Eighth Circuit's decision in *North Dakota State University v. United States,* 255 F.3d 599 (8th Cir.2001), in which the court held that payments made to tenured faculty at North Dakota State University pursuant to the terms of an early retirement plan were payments "in exchange for the relinquishment of their contractual and constitutionally-protected tenure rights" that were "not subject to FICA taxation." *Id.* at 607.

■■■■ The Government contends that Plaintiffs have not demonstrated a common issue because there are differences in the laws that govern tenure for different types of public employers (e.g., public secondary schools versus colleges) and because the determination of the FICA tax depends upon the individual circumstances of each class member. For example, the Government asserts that the payment a particular taxpayer received may have put the taxpayer over the monetary cap for assessment of FICA tax,

resulting in no FICA tax on some or all of the payment. Another scenario offered by the Government is that the FICA calculation may be complicated if an employee had multiple employers and the employee's wages, together with the buy-out amount, exceed the amount of the FICA cap. However, as Plaintiffs note, while there may be many different retirement plans, all class members' claims share the common element of receiving a payment in exchange for the property right of tenure and/or a just cause contract right. This common element gives rise to the legal issue common to all claims of whether such payments are subject to FICA tax. Moreover, class treatment is not precluded by the fact that the determination of the refund amount might require an individualized assessment. As the Sixth Circuit has explained:

> No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.

*Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988). "If the determination of damages becomes ... encumbered by individual factual issues, the court can decertify the class for the determination of money damages." *Taylor*, 41 Fed.Cl. at 444. Thus, Plaintiffs have shown that the proposed class meets the commonality requirement.

### 3. Typicality

 Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Typicality "requires a demonstration that there are other members of the class who have the same or similar grievances as the plaintiff." *Belles v. Schweiker*, 720 F.2d 509, 515 (8th Cir.1983).

> [W]hen such a relationship is shown, a plaintiff's injury arises from or is directly

related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

*Am. Med. Sys.*, 75 F.3d at 1082 (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 3–13, at 3–76 (3d ed.1992)(omitting footnote)).

 The Court concludes that the typicality requirement is satisfied because Plaintiffs' claims and the class members' claims are based upon the IRS's determination that the payments Plaintiffs received in exchange for their tenure rights are subject to FICA tax. Therefore, Plaintiffs' claims are typical the class members' claims.

### 4. Adequacy

The fourth prerequisite to class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). This "requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *Am. Med. Sys.*, 75 F.3d at 1083. The Government does not challenge the ability of Plaintiffs' counsel to fairly and adequately represent the class. However, the Government contends that it is questionable whether Plaintiffs would adequately and fairly represent the interests of the class because aspects of Plaintiffs' employers' early retirement programs might be favorable to Plaintiffs but unfavorable to taxpayers employed by other school districts. The Court rejects this argument for the same reasons it rejected the Government's argument regarding commonality. As indicated above, the issue common to Plaintiffs and the class members—all of whom received cash payments in exchange for surrender of their property rights—is whether those payments are subject to FICA tax. Thus, the Court

concludes that this requirement has been met.

## B. Requirements of Fed.R.Civ.P. 23(b)

### 1. Rule 23(b)(3) Requirements

A class may be certified under Rule 23(b)(3) if "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and [ ] a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R.Civ.P. 23(b)(3). In determining whether certification of a Rule 23(b)(3) class is warranted, courts should consider:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.*

■■■ The first question the Court must consider in determining the propriety of Plaintiffs' proposed Rule 23(b)(3) class is whether the predominance requirement is met. While some courts have observed that a finding of commonality will generally satisfy the predominance requirement, *see Clark v. Retrieval Masters Creditors Bureau, Inc.,* 185 F.R.D. 247, 250 (N.D.Ill.1999), the Sixth Circuit has stated that the predominance requirement is "more stringent." *Am. Med. Sys.,* 75 F.3d at 1084. As discussed above, the primary issue presented is whether the payments Plaintiffs and the class members received are subject to FICA tax. This question, which is the main issue in contention, predominates over other issues of law and fact affecting individual class members.

■■■ The other question to be answered is whether the form of a class action is superior to other methods for handling the controversy. The Court concludes that the circumstances in this case render a class action the superior method to resolve this case. The nature of the claims, which are based upon the IRS' uniform treatment of the payments Plaintiffs and the class members received, as well as the likelihood that the claims of each class member are relatively small, render class treatment the most efficient and appropriate means of resolving this litigation. The size of the claims of the class members make it unlikely that any class member would have a greater interest in pursuing their claim on an individual rather than class basis.[2]

It is also more desirable to have all the class claims pending in one court in order to save costs, promote the efficient use of judicial resources, and ensure that similar claims are treated in a consistent manner. Thus, maintenance of a class action in this Court would be consistent with the policies supporting class actions.

### 2. Rule 23(b)(1) Certification

Having already concluded that certification is proper under Rule 23(b)(3), the Court need not address Plaintiffs' argument regarding certification under Rule 23(b)(1).

### IV. *Conclusion*

For the foregoing reasons, the Court will grant Plaintiffs' motion for class certification and certify the class pursuant to Fed. R.Civ.P. 23(b)(3).

An Order consistent with this Opinion will be entered.

### *ORDER*

In accordance with the Opinion filed this date:

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Certification of Class (docket

---

2. For example, the amounts claimed by Appoloni, Bergemann, and Engel, are $202.80, $181.95, and $181.95, respectively. (Compl.¶ 3.)

No. 2) is **GRANTED**. The following class is certified pursuant to Fed.R.Civ.P. 23(b)(3):

> all retired public school, college, community college, and university employees residing in the Western District of Michigan who: (1) had Federal Insurance Contributions Act taxes withheld on payments received in exchange for their property rights of tenure and/or just cause contract rights in connection with early retirement programs; (2) filed claims for refunds with the Internal Revenue Service; and (3) had their claims denied on or after November 21, 2000.

**IT IS FURTHER ORDERED** that Plaintiffs' counsel shall file a proposed notification form within thirty (30) days of the date of this Order, together with a statement describing the method by which the notice will be provided to class members and a list of persons to whom the notice will be sent. The Government will have fourteen (14) days from the date such proposed notice is filed to submit any objections or comments.